[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff brought this action against Toyota Motor Sales, U.S.A., Inc., Toyota Motor Distributors, Inc., Century Toyota, Inc. and Toyota Motor Corporation (collectively, "Toyota"), alleging that he sustained injuries while a passenger in a 1987 Toyota Camry that was involved in an accident on August 4, 1991. He further alleges that the seat belt restraint system in the Camry was in a "defective and unreasonably dangerous condition."
The Camry was sold by Century Toyota, Inc. to a Rochelle S. Wood and is alleged to have been "designed, manufactured, assembled, distributed and/or sold" by the other defendants. Count one of the complaint, brought pursuant to the provisions of General Statutes, § 52-572m, et seq., alleges: that Toyota designed an automatic upper torso restraint and manual lap belt system they should have known was defective; failure to design the restraint to provide reasonable crash protection; failure to incorporate new technology into the restraint system; failure to modify the restraint system or to recall vehicles with this restraint system; production of the restraint system when they should have known that passengers would likely use only the upper CT Page 13684 torso portion and be injured; production of the restraint system when they should have known that the manual lap retractor was hidden and would not likely be found and used by passengers; failure to test the restraint system with only the upper torso portion in use; negligent assembly of the seat and lap belt; failure to warn passengers about the danger of using only the upper torso restraint when the defendant knew of the danger of such use and when such warnings would have been "technologically feasible and cost effective"; and "otherwise" producing an automobile in a dangerous and defective condition and negligently "performing any one or more of the above acts or omissions."
The complaint further alleges that the Camry motor vehicle was placed in the stream of commerce by Toyota and reached the plaintiff "without substantial change" affecting its condition and that the plaintiff's resulting injuries include quadriplegia, various fractures, and other injuries, some of which will be permanent.
The second count alleges that the plaintiff's "injuries and losses are the direct and proximate result of . . . [Toyota's] reckless disregard for the safety of product users and consumers."
Toyota filed a motion to disqualify plaintiff's counsel and law firm on the grounds that Rules 1.9 and 1.10 of Connecticut's Rules of Professional Conduct require the disqualification of Attorney Ted Leopold and his law firm, Ricci, Hubbard Leopold, because Leopold, while a member of the law firm Rumberger, Kirk 
Caldwell, P.A., had previously defended Toyota in automotive product liability lawsuits, including actions involving allegedly defective seats and seat restraint systems.
In opposing the motion, the plaintiff filed the following: a certified copy of the deposition testimony of Peter L. Wechsler (a named shareholder in Rumberger, Kirk Caldwell, P.A., who was "Mr. Leopold's senior partner" [p. 44]); and a certified copy of the deposition testimony of F. Laurens Brock (an attorney with Rumberger, Kirk Caldwell, P.A. with first hand knowledge of that firm's staffing on Toyota's cases and who reviewed Attorney Leopold's billing on Toyota's cases) with copies of complaints from Toyota cases on which Leopold billed hours. The memorandum and supporting documents are subject to a protective order removing the materials from public scrutiny. CT Page 13685
Toyota's reply memorandum of law, along with the time sheets of Attorney Leopold while he was employed at Rumberger, Kirk 
Caldwell, P.A., are subject to a similar protective order.
Toyota supported its motion to disqualify counsel by comparing this case to other crashworthiness cases. The plaintiff, by leave of the court, filed a supplemental memorandum of law in which he distinguishes his case and contends that his claims concern only the "defective automatic upper torso restraint and manual lap belt system and not . . . a defective seat or general crashworthiness claims." Moreover, the plaintiff offers to amend his complaint to reflect his intent to sue based only on the restraint system by eliminating references to seats in his complaint. The plaintiff further argues that Toyota has failed to prove that Attorney Leopold "has any insights into Toyota's position in this case" which would merit disqualification.
The plaintiff distinguishes this case, where counsel is suing a former client several years after last representing that client, from a line of cases in which lawyers have been disqualified after switching sides in the same matter. However, that is not the claim at issue in this case.
The Rules of Professional Conduct have regulated the conduct of lawyers in Connecticut since 1986. Williams v. Warden,217 Conn. 419, 432 n. 5 (1991). Rule 1.9 of the Code of Professional Conduct, entitled "Conflict of Interest: Former Client," states that "[a] lawyer who has formerly represented a client in a matter shall n()t thereafter: (a) Represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interest of the former client unless the former client consents after consultation; or (b) Use information relating to the representation to the disadvantage or the former client except as Rule 1.6[1] would permit with respect to a client or when the information has become generally known."
Rule 1.10, entitled "Imputed Disqualification: General Rule," states that "(a) While lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing along would be prohibited from doing so by Rules 17,[2] 1.8(c),[3] 1.9[4] or 2.2[5]. (b) When a lawyer becomes associated with a firm, the firm may not knowingly represent a person in the same or a substantially related matter in which that lawyer, or a firm with which the lawyer was CT Page 13686 associated, had previously represented a client whose interests are materially adverse to that person and about whom the lawyer had acquired information protected by Rules 1.6 and 1.9(b) that is material to the matter."
Turning for support to the Comment to Rule 1.9, the plaintiff argues that the comment upholds his choice of counsel. The Comment states: "When a lawyer has been directly involved in a specific transaction subsequent representation of other clients with materially adverse interest clearly is prohibited. On the other hand, a lawyer who recurrently handled a type of problem for a former client is not precluded from representing another client in a wholly distinct problem of that type even though subsequent representation involves a position adverse to the prior client."
The Comment highlights the narrow line between permissible and impermissible representation. Where representation concerns "a wholly distinct problem" of the type in which counsel represented a former client, another client may be represented "even though subsequent representation involves a position adverse to the prior client." The Comment does not, however, override the prohibition of transactional representation.
The participation by Attorney Leopold in representing Toyota in cases involving claims of crashworthiness clearly prohibits him from appearing for the plaintiff in the instant matter. Billing records reflect that he billed Toyota for time spent on cases concerning seats and seat belts. While none of the documentation shows any work specifically on a Camry seat belt restraint system, the issue of crashworthiness can not be neatly divided into separate compartments, each viewed in isolation. The issue of crashworthiness subsumes its various parts and, although multifaceted must be considered as a single issue when held to the light of the Code of Professional Conduct.
The fundamental right to freely choose one's counsel is subject to limitation when "the relationship between the issues in the prior and present cases is `patently clear' or . . . the issues are `identical' or `essentially the same.'" Bergeron v.Mackler, 225 Conn. 391, 399 (1993).
"Disqualification of counsel is a remedy that serves to `enforce the lawyer's duty of absolute fidelity and to guard against the danger of inadvertent use of confidential CT Page 13687 information.' In disqualification matters, [the court] must be solicitous of a client's right freely to choose his counsel; mindful of the fact that a client whose attorney is disqualified may suffer the loss of time and money in finding new counsel and may lose the benefit of its long-time counsel's specialized knowledge of its operations." Bergeron v. Mackler, 225 Conn. 391,397-098 (1993).
"The competing interests at slake in the motion to disqualify, therefore, are: (1) the defendant's interest in protecting confidential information; (2) the plaintiff's interest in freely selecting counsel of their choice; and (3) the public's interest in the scrupulous administration of justice." Bergeron,supra, at 398.
"Once a substantial relationship between the prior and present representation is demonstrated, ". . . Bergeron v.Mackler, supra, at 399, ". . . there is an irrebuttable presumption that the former client revealed facts requiring the attorney's disqualification." Prisco v. Westgate Entertainment,Inc., 799 F. Sup. 256, 269 (D. Conn. 1992). In a 1983 decision, the Connecticut Supreme Court held that "[w]here the opportunity
for disclosure of confidential information to an adversary is shown, the breach of confidence would not have to be proved; it is presumed. . . ." (Emphasis added) Goldenberg v. Corporate Air,Inc., 189 Conn. 504, 512. See MMR/Wallace Power v. Thames,764 F. Sup. 712, 726 n. 24 (D. Conn. 1991) (refuting that the presumption is rebuttable).
A review of the documents submitted by the parties regarding the motion to disqualify discloses that Leopold had ample opportunity to be exposed to Toyota's strategies in defense of products liability cases in which claims of crashworthiness were at issue. His billing records indicate that he was involved in work for Toyota concerning issues of crash testing and accident reconstruction. These issues are, if not identical, essentially the same. That requires the disqualification of Attorney Leopold and his firm pursuant to the standards of professional conduct set forth in Rule 1.10 of the Rules of Professional Conduct.
The plaintiff's claim that the defendants waived the right to move for disqualification is without foundation. The Comment to Rule 1.9 states: "A waiver is effective only if there is a disclosure of the circumstances, including the lawyer's intended role in behalf of the new client." Under our practice and CT Page 13688 procedure, it is fundamental that "[a] party must, of course, be aware of any right that he possesses prior to a proper waiver of it." McHugh v. McHugh, 181 Conn. 482, 486 (1980). A review of the court file and the documents submitted in regards to this motion clearly indicate that plaintiff's counsel made no disclosure pursuant to Rule 1.9, either at the time of filing the motion prohac or later.
The motion to disqualify is granted.
On February 27, 1995, the parties appeared before the court (Gordon, J.) for hearing which was held concerning a protective order agreement submitted by the parties. The record reflects that the parties agreed: (1) that the billing records of Attorney Leopold were confidential documents; (2) that only counsel in the present case can review the billing records unless Toyota agrees to any additional reviewer, subject to that person executing a confidentiality agreement; (3) that the plaintiff may make a motion to modify the confidentiality agreement to allow additional persons to review the documents; and (4) that during the pendency of such a motion, Toyota would not argue the motion to disqualify counsel on the merits, as long as the plaintiffs motion was made in good faith.
No protective order issued following the hearing. On April 7, 1995, Toyota filed a motion for a protective order for documents that the court may order produced in connection with the motion to disqualify. The plaintiff filed an objection to the motion together with a proposed protective order of his own. Thereafter, the defendant filed a second motion for protective order seeking "to facilitate production of confidential documents." A proposed protective order was attached.
The court finds that at the February 27th hearing, held pursuant to the provisions of Practice Book, § 221, good cause was shown for the issuance of a protective order to preserve the confidentiality of certain documents. The defendants' motion for protective order, filed April 7, 1995, is granted and the plaintiff's objection to that motion is overruled. The proposed protective order, filed by the defendants on April 27, 1995, is adopted by the court and hereby reiterated as a court order to protect the confidentiality of documents disclosed (and under seal) in connection with the motion to disqualify. CT Page 13689
The protective order will guard and assure the return of the documents produced, as well as copies and summaries of those documents:
BY THE COURT,
LEANDER C. GRAY, JUDGE